NEWTON R. PARVIN v. MUTUAL RESERVE LIFE INSURANCE
COMPANY, Appellant.

**Reinsurance:** CONTRACTS: STATUTES.   Under the Illinois statutes, a
1  contract for the transfer of the membership of a benefit association
   to a reinsurer, limiting the reinsurance to those members who

appeared on the books of the transferring company to be in good standing, was valid.

**Reinsurance:** NONPAYMENT OF ASSESSMENTS: RIGHTS OF MEMBERS.
2   Where a contract of reinsurance provided for the transfer of only such members as were shown by the books of the transferring company to be in good standing at the time, and plaintiff was not shown thereby to be a member in good standing, and it was further shown that he had not only failed but refused to pay assessments prior to the transfer, he acquired no rights from the reinsurance.

*Appeal from Linn District Court.*— HON. W. N. TREICH-LER, Judge.

SATURDAY, JUNE 11, 1904.

SUIT at law to recover on two certificates of membership issued by the Northwestern Masonic Aid Association on the life of the plaintiff's father, T. S. Parvin. The facts necessary to an understanding of the questions to be determined in this case are as follows: The Masonic Aid Association was a mutual benefit association incorporated under the laws of the State of Illinois. The certificates or policies sued on herein were issued to Mr. Parvin in April, 1889. By their terms, Mr. Parvin was to pay $1.70 upon the death of each member of the division to which he belonged; such payments to be made after due service upon him of notice of the death of such member, as provided in the by-laws of the association. Upon the death of Mr. Parvin there was to be paid to his beneficiary a certain sum of money for each member of the division to which he belonged, not exceeding the amount of the certificates. Both certificates provided that upon a failure to pay the stipulated assessments as agreed, the contract should "close and be of no effect." In June, 1896, the Northwestern Masonic Aid Association changed its corporate name and was thereafter called the Northwestern Life Assurance Company. In August, 1900, a contract was entered into between the Northwestern Life Assurance Company and the appellant,

then called the Mutual Reserve Life Association, whereby the company tendered to the association for membership " all of its living members who, by its books and records, are in good standing, except such as shall file a written notice of his or her preference to be transferred to some other corporation," and whereby the association agreed to accept as its members all of the members of the company who were in good standing at the time the contract was ratified and approved by the company, " as shown by the books and records of said company." Mr. Parvin died in June, 1901. The plaintiff contends that his father became a member of the appellant company by virtue of this contract with the Northwestern Company, while the appellant asserts that it never agreed to accept, and never did accept, Mr. Parvin as one of its members.   There was a directed verdict for the plaintiff, and from a judgment thereon the defendant appeals.— *Reversed.*

*C. E. Cleveland, Geo. Burnham, Jr.,* and *Wright & Call,* for appellant.

*Clark Varnum, Voris & Haas,* and *W. A. Foster,* for appellee.

SHERWIN, J.— The contract between the Mutual Reserve Fund Life Association and the Northwestern Life Assurance Company, so far as material to the inquiry before us, is in the following language:

First.   Said Company has and does hereby tender to said Association, as members of said Association, each and all of its living members who, by its books and records, are in good standing, except such as shall file a written notice of his or her preference to be transferred to some other corporation than to the said association, in accordance with the provisions of Section 16 of an act of the Legislature of the State of Illinois [Hurd's Revised Statutes, 1903, page 1109, chapter 73, section 245], entitled " an act to incorporate

Companies to do the business of life or accident insurance on the assessment plan, and to control such companies of this State and of other States doing business in this State, and to repeal a certain Act therein named, and providing and fixing the punishment for the violation of the provisions thereof," approved by the Legislature of the said State of Illinois, June 22nd, 1893, and in force July 1st, 1893, and all who may keep and continue their respective insurance in force by paying the premium calls of said association, in accordance with its calls, rules and by-laws now in force or hereinafter to be established, and in accordance with the conditions of this agreement.

Second.   And the said Association on its part agrees to accept and does hereby accept as its members, all of the members of said company who are in good standing at the date and hour of the day this contract is ratified and approved by the members of said company, as aforesaid, as shown by the books and records of said company, upon the terms and conditions herein provided, and expressly disclaims the assumption of any policy or certificate, or of any liability on account of any which do not appear as aforesaid to be in good standing by the books and records of said company.

The section of the Illinois statute to which reference is made in the contract reads as follows:

No such corporation, under the laws of this State, shall transfer its risks to or reinsure them in any other corporation unless the contract of transfer or reinsurance is first submitted to and approved by a two-thirds vote of the meeting of insured, called to consider the same, of which meeting a written or printed notice shall be mailed to each member, certificate or policy holder, at least thirty days before the day fixed for such meeting.   If such transfer shall be approved, every member, certificate or policy holder of the corporation, who shall file with the secretary thereof, within ten days after the meeting, a written notice of his preference to be transferred to some other corporation than that named in the contract, shall be accorded all the rights and privileges, if any, in aid of such transfer, as would have been accorded under the terms of such contract had he been transferred to the corporation named therein.   No such corpo-

ration organized under the laws of this State shall transfer its risks or assets, or any part thereof, to or reinsure its risks, or any part thereof, in any insurance corporation of any other State or country which is not at the time of such transfer or reinsurance authorized to do business in this State under the laws thereof. [Hurd's Revised Statutes, 1903, page 1109, chapter 73, section 245.]

By the terms of the contract between the company and the association, only such members of the company as were at the time in good standing, as shown by its books and

1. REINSURANCE: records, were tendered for membership in the contracts: statutes: association, and only such members of the company were accepted by the association. The statute permitted the transfer of the risks which had been assumed by the company, and their reinsurance in any insurance corporation which was at the time authorized to do business in the State. It did not, in terms or by implication, attempt to dictate the contract which should be made between the corporation so transferring its membership and the reinsurer, nor did it prohibit a contract limiting the transfer or reinsurance of those only who appeared by the books and records of the transferring corporation to be in good standing at the time. On the contrary, the very terms of the act contemplated a partial transfer of risks, as well as of assets, and we discover nothing in the law which would warrant the conclusion that the contract in this case could not legally be made. The right to transfer and to reinsure is generally recognized and sustained unless it be prohibited by statutory enactment. *Phœnix Ins. Co. v. Transfer Co.*, 117 U. S. Rep. 312 (6 Sup. Ct. 750, 29 L. Ed. 873); *Faneuil Hall Ins. Co. v. Liverpool, London & Globe Ins. Co.*, 153 Mass. 63 (26 N. E. Rep. 244, 10 L. R. A. 423). The statute under consideration attempted only to restrict such transfer and reinsurance to companies or corporations authorized to do business in the State, and to regulate the method thereof. Under the contract, no members were tendered for transfer,

or accepted as members, except those whom the books and records showed to be in good standing; hence the books and records were the only means provided for determining who could take advantage of the contract and become a member of the appellant, and, if they did not show that Mr. Parvin was a member in good standing at the time the contract became effective, he never became a member of the appellant, and was not reinsured under the contract, or by the statute in question.

We do not consider it necessary to determine where the burden of proof rested on this question, because the books of the Northwestern Life Assurance Company showed that

2. REINSURANCE: non-payment of assessments; rights of members.

Mr. Parvin was not a member in good standing at the time of the transfer. The books introduced in evidence showed that he had failed to pay assessments, and, under the terms of his contract with the company, such failure forfeited his rights as a certificate holder. That he had not only failed to pay assessments, but had absolutely refused to do so, because of his belief that the assessments were unjust, is clearly proven; and, indeed, it is not contended that such was not the fact. Whether he was unjustly assessed or not is a question not involved in this case. The appellant did not assume any liability for the wrongful or mistaken acts of the Northwestern Company, and, however unjust such company's treatment of the deceased may have been, the appellant cannot be held liable therefor.

Other questions are discussed by counsel, but our conclusion on the main proposition presented renders their consideration unnecessary.

The plaintiff was not entitled to a verdict or judgment, and the case is *reversed*.