CHESTER H. BOLLES *et al.*

*v.*

THE MUTUAL RESERVE FUND LIFE ASSOCIATION.

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. BENEFIT SOCIETIES—*section 16 of the act of 1893, relating to transfers of insurance, construed.* Section 16 of the Assessment Companies act of 1893, (Laws of 1893, p. 124,) prescribing the course to be pursued in transferring members from one company to another, contemplates the transfer of all members, certificate holders or policy holders actually in good standing, whether appearing in good standing on the books of the transferring company or not, except as to those giving notice of their preference to be transferred to another company.

2. SAME—*approval of contract of transfer operates ipso facto to transfer all members.* Upon approval of a contract of transfer by two-thirds of the members of the transferring company, all the members, certificate holders or policy holders in actual good standing in the transferring company become members, certificate holders or policy holders in the transferee company without any further act upon their part, unless they elect to give notice of their preference to be transferred to some other company.

3. SAME—*when member of transferring company is not a party to contract of transfer.* A certificate holder in an assessment company to whom no notice was sent of a meeting of members of the company to vote upon the question of approving a contract of transfer to another company, and who does not appear and take part in the meeting, is not a party to the contract in the sense that he is precluded from questioning its terms.

4. SAME—*transferee company cannot rely upon books of transferring company as to members in good standing.* The books of an assessment company are not the only evidence of the good standing of its members, and if another company, in making a contract of transfer, chooses to rely upon such books as showing what members in the transferring company are in good standing it does so at its peril, and will be held, under section 16 of the act of 1893, to have accepted all members in actual good standing, whether appearing so on the books or not.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

A. G. MURRAY, for appellants:

Transfers of property after proceedings of appeal from judgment or decree are instituted, and during further pendency of suit, are made *pendente lite* and are affected by *lis pendens*. *Gilman* v. *Hamilton*, 16 Ill. 225; *Grant* v. *Bennett*, 96 id. 513; *Smith* v. *Brittenham*, 109 id. 540; 21 Am. & Eng. Ency. of Law, (2d ed.) 620.

In doubtful cases, if by giving a liberal construction to the statute it will be the means of producing great injustice and lead to consequences that could not have been contemplated by the legislature, courts are bound to presume that the legislature intended no such consequences, and give such a construction as will promote the end of justice. *Iuka* v. *Schlosser*, 97 Ill. App. 222.

The real intention of the law-makers, when accurately ascertained, will always prevail over the literal sense of the terms of the statute. *Gilbert* v. *Morgan*, 98 Ill. App. 281.

A contract containing provisions repugnant to the general policy of the law or contrary to the provisions of a statute is void as to such provisions, and it is so held as well in law as in equity. *Thalimer* v. *Brinkerhoff*, 20 Johns. 386.

A contract based partly on good consideration and partly illegal will be enforced where the party seeking to enforce it is not the wrongdoer, or where the denial of relief would benefit the guilty at the expense of the innocent. *Bank* v. *King*, 44 N. Y. 87; 2 Beach on Contracts, sec. 1426; *Corcoran* v. *Coal Co.* 138 Ill. 390; 5 Thompson on Corp. secs. 5980, 5981; *Crichfield* v. *Paving Co.* 174 Ill. 466.

The law in force when a contract is made must be deemed to have entered into and to have formed a part of it, and such contract is to be construed and enforced in accordance with the law as it then existed. *Kendall* v. *Fader*, 99 Ill. App. 104; 199 Ill. 294.

No life insurance company doing business in Illinois may make any distinction or discrimination between insurants of the same class and equal expectation of life, in its estab-

220—26

lishéd rates, nor in the charging, collecting, demanding or receiving of the amount of premium for insurants of the same class and equal expectation of life. *Insurance Co.* v. *People,* 195 Ill. 430; *Insurance Co.* v. *People,* 200 id. 594; 200 id. 619; Hurd's Stat. chap. 73, par. 27.

The right of forfeiture can rest only upon strict legal right, and it must abide inflexibly the terms of the contract. *Assurance Co.* v. *Erlenkoetter,* 90 Ill. App. 99.

Where time of payment of premiums is extended the policy does not lapse. *Insurance Co.* v. *Sanford,* 200 Ill. 126.

KERRICK & BRACKEN, (GEORGE BURNHAM, Jr., of counsel,) for appellee:

Statutes and contracts should be read and understood according to the natural and most obvious import of the language used, without resorting to subtle and forced construction for purpose of either limiting or extending their operation. *Rothschild* v. *Insurance Co.* 97 Ill. App. 547.

When a party makes an express contract for a liability to a certain extent, no agreement for a liability to a greater extent can be implied. *Failing* v. *Osborne,* 3 Ore. 499.

Where a member of a benefit society is expelled by the local organization without cause, and such act is therefore null and void, he cannot continue to claim the rights of a member without affirming or disaffirming the action had within a reasonable time. By allowing assessments and dues which were payable before he was expelled to remain unpaid and not paying or tendering payment of such as subsequently occurred he will be regarded as having acquiesced in his expulsion, and there can be no recovery on the certificate issued to him. *Glardon* v. *Knights of Pythias,* 50 Mo. App. 45.

An acceptance, to be good, must in every respect meet and correspond with the offer made, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points, closing with them just as they stand.

*Fox* v. *Turner,* ·1 Ill. App. 15; *Provision Co.* v. *Prentiss,* 157 Ill. 506.

One who accepts the terms of a contract must accept the contract as a whole. He cannot accept a part and reject the rest. Bigelow on Estoppel, (2d ed.) 511.

A mere agreement between two for the benefit of another does not create a completed contract until acceptance by the third party. There is no privity of contract between him and the promisor. *Bank* v. *Kirkwood,* 172 Ill. 563.

Judgments and decrees are not notice to persons not parties to them, except in so far as they create liens upon property. Hurd's Stat. chap. 77, sec. 1; chap. 22, secs. 44, 45.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the March term, 1902, of the circuit court of Sangamon county appellants began an action of assumpsit against appellee to recover upon a benefit certificate issued by the Covenant Mutual Benefit Association upon the life of one Hiram O. Bolles. The case was tried in the circuit court without a jury and judgment rendered in favor of the plaintiffs for the amount named in the certificate, ($5000,) less certain credits amounting to $2216, and for costs of suit. The defendant appealed, and the Appellate Court reversed the judgment of the circuit court, and plaintiffs below now prosecute this appeal.

On February 5, 1884, the Covenant Mutual Benefit Association of Illinois issued its certificate or policy of insurance to Hiram O. Bolles, by the terms of which it agreed to levy an assessment upon the death of the said Bolles, and to pay to the beneficiaries in said certificate mentioned a sum not exceeding $5000. The insured paid all assessments levied against him under the terms of the certificate until March 1, 1898, when assessment No. 149 was levied, payable March 31, 1898, which he refused to pay because it was unauthorized. He was thereupon dropped from the roll of membership and thereafter his certificate treated as lapsed and

forfeited.    On March 31, 1898, he and others filed their bill in equity against said company for relief, which bill resulted in a decree on April 9, 1900, declaring said assessment No. 149 null and void, and restoring the complainant Bolles and others to all their rights of membership in the association, upon the payment by them, on or before May 1, 1900, of the amount due from each.    In the meantime, on December 28, 1899, while the suit in equity was pending, the association, the corporate name of which had been changed to "Covenant Mutual Life Association," entered into a contract with the Northwestern Life Assurance Company, by the terms of which the latter accepted as its members all of the members of the association who were in good standing on that date, except such as filed a written notice of his or her preference to be transferred to some other corporation, as provided in section 16 of the act to incorporate companies to do the business of life or accident insurance upon the assessment plan, etc., approved June 22, 1893, in force July 1, 1893.    (Hurd's Stat. 1903, p. 1109.)    On April 26, 1900, one Stewart Goodrell, who had been named as trustee in the contract of said association, notified Bolles that the amount of $205.40 was due from him, and that upon the payment of that amount he would be restored to membership in said association, and that all future assessments would be payable to the Northwestern Life Assurance Company, and in pursuance of that notice Bolles paid said amount claimed to be due from him. On August 21, 1900, the last named company entered into a transfer contract with appellee, whereby the former tendered to the latter each and all of its living members "who by its books and records were in good standing, except such as filed written notice of their preference to be transferred to some other corporation, in pursuance of said section 16," and the latter association accepted the members so tendered, but by the contract expressly disclaimed the assumption of any policy or certificate issued to any person who did not appear to be in good standing by the books and records of the North-

western Life Assurance Company. On September 1, 1900, at a meeting held for that purpose, said contract of transfer was ratified by two-thirds of the members of the Northwestern company, as provided in section 16, *supra.* Bolles was not notified of that meeting, and there is nothing in the record to show that he was present or in any way participated in it. He was not *in good standing upon the books and records* of the Northwestern company at the date of that transfer and his name did not appear upon its books, though he was, in fact, a member in good standing. No call for the payment of any premiums or assessments was ever made upon him by the appellee, and he neither paid nor tendered payment of any such assessments. He died on August 8, 1901, leaving the plaintiffs below as his beneficiaries under said certificate.

The trial court of its own motion, among others, held two propositions of law. The first reads as follows:

"*First*—The court holds that the transfer and re-insurance of risks from the Covenant Mutual Life Association of Illinois to the Northwestern Life Assurance Company, and the transfer and re-insurance of risks from the Northwestern Life Assurance Company to the Mutual Reserve Fund Life Association, defendant herein, were effected and consummated under section 16 of the act of 1893, (Hurd's Stat. 1903, chap. 73, par. 245,) and that the intent and meaning of said statute is that such transfer and re-insurance shall include each and all of the members, certificateholders or policyholders of the transferring association or company who are in good standing in the transferring association or company or who hold valid certificates or policies therein at the time of such transfer, except such as shall, within ten days, file written notice of their preference to be transferred to some other corporation, as provided in such statute."

The second proposition is to the effect that upon the approval of the contract of transfer by two-thirds of the members then in good standing in the transferring company, or

who then hold valid certificates or policies in such company, "without further act become members, certificateholders or policyholders, as the case may be, of and in the transferee association or company, and entitled to all the rights and benefits provided in such transfer and re-insurance contract, unless they have at their own request been transferred to some other association or corporation, as provided in said statute."

There is and can be no serious controversy as to the fact that Bolles, the assured, was by the decree rendered upon his bill of March 31, 1898, and the payment by him of the amount therein found due from him to the company, restored to his membership in good standing in the first company, nor that he was entitled to be so treated in the first contract of transfer, it being made during the pendency of that bill. If, therefore, the Northwestern company had performed its duty he would have appeared upon its books and records as a member in good standing and by the terms of the contract of transfer become a member of the appellee company.

Nor do we agree with counsel for appellee that Bolles, under the terms of his certificate of membership and the evidence in this case, was bound to apprise appellee of his claim to membership in it, and pay or offer to pay it such dues and assessments as might be required of him. No requirements were made of him by appellee, and we are unable to see upon what principle it can be said that he was bound, in the absence of notice, to assert his membership in the appellee company.

The theory of the opinion of the Appellate Court is, that inasmuch as the appellee, by its contract of transfer with the second company, limited its liability to such members as were in good standing upon the books and records of that company, it cannot be held beyond the terms of its contract; that the bad faith of the Northwestern company cannot authorize the court to make another and different contract between the parties than the one actually made by them, and

hold the third company liable to pay the amount of a benefit certificate not transferred to it by the terms of the contract. That courts will never make new contracts for parties, but will only construe and enforce them as made, is elementary. But the question here is, who are to be treated as parties to the contract between the second and third companies, within the meaning of that rule? Hiram O. Bolles was in no sense a party to the contract. Had he been notified of the meeting of the members of the second company, as required by the statute, he might have been held to be a party by representation. But it is expressly stipulated that he was not so notified, nor did he appear or take any part in any such meeting.

As we understand the argument of counsel for appellee and the decision of the Appellate Court, the position is, that the transferee company, under the statute, is not chargeable with notice of any irregularity or bad faith or misconduct in the proceedings of the company making the transfer, but that its transferee may effectually protect itself against liability by provisions in the contract as in ordinary cases between private parties. We do not agree to this position. Here, as we have already said, Hiram O. Bolles had fully complied with every requirement and condition of his certificate of insurance. He was guilty of nothing which could justly deprive his beneficiaries of the benefits of his insurance. The wrong was that of the second company, and if this action fails, it must be because of such wrongful conduct alone and the failure of the appellee to discover that wrong. Plaintiffs' case is therefore one which strongly appeals to the sense of justice, and while this consideration cannot justify the disregard of plain rules and principles of law, the fact may and should be considered in giving a construction to the statute, by virtue of which, alone, the transfer was attempted to be made.

The language of section 16, above referred to, is as follows: "No such corporation under the laws of this State shall transfer its risks to or re-insure them in any other cor-

poration, unless the contract of transfer or re-insurance is first submitted to and approved by a two-thirds vote of a meeting of the insured, called to consider the same, of which meeting a written or printed notice shall be mailed to each member, certificate or policyholder at least thirty days before the date fixed for such meeting. If such transfer or re-insurance shall be approved, every member, certificate or policyholder of the corporation, who shall file with the secretary thereof, within ten days after the meeting, a written notice of his preference to be transferred to some other corporation than that named in the contract shall be accorded all the rights and privileges, if any, in aid of such transfer as would have been accorded under the terms of such contract, had he been transferred to the corporation named therein. No such corporation organized under the laws of this State shall transfer its risks or assets, or any part thereof to or re-insure its risks, or any part thereof, in any insurance corporation of any other State or country which is not at the time of such transfer or re-insurance authorized to do business in this State under the laws thereof."

Being a public statute, it entered into and became a part of the contract of transfer, and if it can be construed so as to protect the plaintiffs in this case, and all those who may be similarly situated, every one will agree that it should receive that construction. If it can be held that such companies can not transfer a part of their members and risks, but must transfer all or none, except those who may elect to be transferred to other companies, then the ends of justice can be attained and the courts will be prompt to adopt that construction.

The section of the statute in question does not contemplate a transfer of a part of its members or risks. Its language is, "its risks,"—*i. e.,* all of them. The meeting to ratify the contract is to be a meeting of all the members, the language being, "notice * * * shall be mailed to each member." The two-thirds vote must be two-thirds of all

the members, and if the transfer shall be approved, "every member" is given the right to file with the secretary notice of his preference to be transferred to some other corporation than that named in the contract, clearly indicating that unless such choice is made the contract of transfer *ipso facto* operates to transfer "every member" to the new or transferee company. It would scarcely be contended that a corporation, under this statute, could transfer only its members of a particular class. If it should tender, by contract, to another company all of its members of a certain age or all residing in a particular place, and should attempt to have that contract ratified by its members, how would it proceed? Manifestly, without reading into the statute language which it does not contain it could not do so, and hence the contract would be illegal and void, and we think the transferee company would be bound to take notice of such illegality. So here, the attempt to tender to the transferee company only such members as appeared to be in good standing upon its books and records, whether all, in fact, in good standing so appeared or not, is an attempt to do what we think the statute does not contemplate. Any other construction places the members of every such association at the mercy of its officers, who through negligence or willfulness failed to place the name of any of its members upon its books. A society or company, under the construction contended for by appellee, finding its risks burdensome and desiring to transfer the same to another company, need only drop from its books and records a sufficient number of its members to induce another company to accept a contract transferring such of its members appearing to be in good standing upon its books and records. It need give no notice to the member whose name has been dropped, of the meeting at which the contract of transfer is to be considered, but when it is ratified and accepted the victim of the neglect or dishonesty of the officer of the company which issued his certificate and to which he paid his money would be left without recourse. If it be said

the transferee company has a right to rely upon the books and records of the transferring company, the answer is, the statute does not so provide; and however difficult or inconvenient it may be for the company receiving the transfer of risks to ascertain who of the members are, in fact, in good standing in the company making the transfer, it should be held bound to do so at its peril. It is under no obligation to receive risks so transferred, and if it chooses to do so it ought to be held according to the strict terms of the statute.

An association or company may, no doubt, for its own convenience keep books and records showing the standing of its members or those insured in it, but we know of no rule of law which makes such books or records the only evidence of the standing of such members or parties insured. Moreover, it is perfectly clear that the attempt on the part of the second company was to transfer all its members in good standing, without reference to their standing on its books and records. The preamble of the contract is, "whereas, the officers and members of the said Northwestern Life Assurance Company deem it for the best interests of its members [not a part of them] to transfer them [all of them] to some other life insurance corporation," etc. And by the ninth paragraph of the contract it is provided that all of the assets remaining in the hands of the trustees (*i. e.,* all of the assets of the second company,) shall be turned over to the transferee company, and as the Northwestern company was thereby left without members or assets, it necessarily ceased to do business and became a defunct corporation. The contract, upon its face, shows that no policies were left outstanding against it, and if there had been, it had no assets with which to pay losses. Therefore, even if it could be held that under the provisions of section 16 a transferring company had power to transfer only a portion of its risks and assets, still under this contract no attempt was made to do so, and we see no reason why the appellee company, a party to that contract, should not be chargeable with notice of its plain meaning.

That part of section 16 which prohibits a transfer of risks and assets to corporations of any other State or country which are not at the time authorized to do business in this State is in no sense a grant of power, but is merely a limitation upon the power previously conferred. Therefore the language, *"its risks or assets, or any part thereof,"* is of no significance. The most that could be claimed would be that if the power given was doubtful, such words could properly be considered in determining the intention of the legislature. But, as already said, in our view of the case no such doubt exists.

The conclusion reached by the Supreme Court of Iowa in *Parvin* v. *Mutual Reserve Fund Life Ass.* 100 N. W. Rep. 39, was undoubtedly correct in that case. Under the facts, Parvin's beneficiaries as we understand could not have recovered against the company making the transfer, whereas in this case the plaintiffs undoubtedly could have recovered against the Northwestern company if it had continued in existence. In so far as the court's construction of the statute in that case differs from the foregoing conclusion we are not disposed to follow it.

We are of the opinion that the circuit court did not err in holding the first and second propositions of law above set forth and in rendering judgment for plaintiffs. We are also of the opinion that under the facts as they appear in this record the cross-errors, which question the rulings of the circuit court in allowing the offsets claimed by the defendant, must be overruled.

The judgment of the Appellate Court will be reversed and that of the circuit court in all things affirmed.

*Judgment reversed.*