THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant, v. ELMER A. GROSS et al., Defendants; L. A. ANDREW, Receiver, Appellee.

No. 41168.

MARCH 8, 1933.

R. F. Clough, for appellant.

L. E. Linnan and G. W. Stillman, for appellee.

ALBERT, J.—On the 14th day of June, 1920, Elmer A. Gross was the owner of 160 acres of land involved herein. On that date he and his wife executed to the plaintiff a note for $16,000, and secured the same by a mortgage on the aforesaid land situated in Kossuth county, Iowa. This mortgage was duly filed of record on the 22d day of June, 1920, and on November 30, 1925, was duly extended for five years. The mortgage provided for a receiver in case of breach of any of its terms, to take possession thereof and collect rents, issues, and profits during the pendency of foreclosure.

This action was brought on December 8, 1930, for the foreclosure of this mortgage, and praying the appointment of a receiver. Decree was entered January 27, 1931, the question of receivership being reserved. Special execution was issued and the property sold on February 28, 1931, leaving a deficiency judgment in the sum of $1,000.

In March, 1931, the receivership question was tried out and on the 31st of that month, the court entered an order denying the right of receivership to the plaintiff.

L. A. Andrew, superintendent of banking, appeared and contested plaintiff's right to a receivership. Andrew was receiver for the County Savings Bank of Algona, but, prior to his appointment as such receiver, the County Savings Bank held a second mortgage on this property. After his appointment, this second mortgage came into his hands from said bank, he foreclosed the same as receiver, and on the 13th day of May, 1929, received a sheriff's deed for said property. As such receiver, he claims the rents and profits from said land. He held title at all times during the pendency of the present proceedings.

It is apparent, therefore, that, at the time this proceeding was commenced, Andrew, as receiver, was the fee title holder of said property, subject to the mortgage of the plaintiff, and it is his claim that as such receiver he is entitled to hold such rents and profits for the benefit of the estate which he represents, and it was on this theory that the lower court refused plaintiff a receiver.

The tenant on this land, E. J. Kain, was a party to the proceedings.

Just what was the status of Andrew, receiver, at the time he took this sheriff's deed? Of course, it contained no warranties, and he took under his deed the rights of Gross and no more. He can, therefore, claim no higher rights in said property than Gross had. In other words, he "stepped into Gross' shoes" as they then existed. We therefore turn to a determination of what rights Gross had at the time plaintiff commenced foreclosure as against this plaintiff on this receivership question.

It is conceded that Gross was insolvent at the time, and the plaintiff has made such showing as would warrant the court in granting him a receiver as against Gross, and, so long as the receiver stepped into the place of Gross and obtained no higher rights than Gross had, we are unable to see where Andrew, as receiver, was entitled to defeat plaintiff's receivership.

We are not aided in this case by a brief and argument by the appellee, hence are unable to determine what his contention was.

To state it in another way, Andrew, as receiver of this bank, was the fee title holder to this property subject to the provisions of the outstanding mortgage of the plaintiff. Plaintiff started foreclosure, and under the provisions of his mortgage, asked for a receiver. Andrew combated the appointment of a receiver on the ground that the property is in the custody of the court, through him as receiver, and the plaintiff is attempting to interfere with the administration of said trust and with the defendant as an officer of the court in discharge of his duties as such officer, and claims that his rights are superior to those of the plaintiff. This seems to be the real nub of the controversy. Of course, if Andrew's contentions are true and if his rights are superior to those of the plaintiff, the plaintiff would not be entitled to the appointment of a receiver. This seems to have been the idea of the lower court in refusing plaintiff's application for a receiver.

It has been suggested in cases similar to this that the plaintiff is not entitled to a receiver because he can file his claim with Andrew, as receiver, and have his rights determined in that receivership. This is an equity case, and all parties interested are present, and we see no reason why this question of priority between plaintiff and Andrew may not be determined in this case. It would be useless to turn plaintiff out of court in this case and then have him come into court by another door for a determination of the same proposition. In addition to what we have heretofore said, when Andrew

obtained title to this property by means of a sheriff's deed, he took it subject to first mortgage and all its terms, and, among others, was the agreement set out in this mortgage entitling the plaintiff, under certain conditions, to the appointment of a receiver to collect rents, income, and profits, and he, therefore, took the property subject to this pledge of the rents, income, and profits and provisions for a receivership. In his foreclosure case, Andrew alleges that this mortgage in favor of the plaintiff was outstanding and superior to his mortgage. It is our conclusion that the plaintiff made the necessary showing entitling it to the appointment of a receiver, and further that the plaintiff is entitled to the rents, income, and profits accruing or arising after he filed his petition for a receiver, and during the period of redemption under its foreclosure.

■ There is no necessity for appointing a receiver for the plaintiff under these circumstances, as Andrew, the receiver, is a party to this action and bound by this finding, and the expense of another receivership would be useless under the circumstances.

We are aware that the pronouncement we make in this case is squarely contrary to the rule laid down in Schlesselman v. Martin, 207 Iowa 907, 223 N. W. 762, and some other cases in which that case is followed, but, after a reconsideration of the questions involved herein and in the Schlesselman case, we reach the conclusion that the Schlesselman case was wrongly decided, and the same is hereby overruled.

With this modification of the decree of the district court, the case is remanded to the district court to make an order in accordance with this opinion.—Modified and remanded.

All Justices concur except Justice EVANS, who dissents.

EVANS, J. (dissenting)—With great respect for the conflicting views of my Brothers, I am constrained to dissent from the majority opinion. I am more concerned for the *ground* of the opinion than for the *result* of it. The case involves the relation sustained by the superintendent of banking, as the receiver of an insolvent bank, to the assets of that bank and to the creditors thereof.

The ground of the opinion in the case at bar is not very definitely stated, but is a matter of inference to some extent from the result reached. In order to reach such result, the opinion does definitely overrule the case of Schlesselman v. Martin, 207 Iowa 907,

223 N. W. 762, 763. This is the particular feature of the opinion to which my dissent is directed. I think that such overruling order must later involve us in inconsistency and in fundamental error. I direct my first attention therefore to the Schlesselman case. That case involved a controversy between Andrew, receiver of an insolvent bank, and a foreclosing mortgagee of real estate over the right of leasehold under a written lease. The insolvent bank was Parnell Savings Bank. Decree was entered on April 14, 1927, declaring said bank insolvent and appointing the superintendent of banking as statutory receiver thereof. On the same date the statutory receiver took dominion of all the property of the insolvent. This property included a mortgaged farm. The tenant, Hahn, was in possession of the farm under a one-year lease made in December, 1926. The lease and the rent notes were turned over to the receiver as a part of the assets of the estate. On June 13, 1927, the mortgagee brought his foreclosure action and claimed the rents and profits for the ensuing year. We held, in substance, that the right of the receiver had attached to the lease on April 14, and that the lien of the mortgage had not attached thereto at that time; that, inasmuch as the receiver took subject to *existing* liens only, the prospective lien claimed by the mortgagee as of June 13, 1927, could not relate back to the supplanting of the rights that had already vested in favor of the creditors of the insolvent. It is now claimed by the opinion in the case at bar that the decision, and the ground thereof, in the Schlesselman case, were erroneous; that, in so far as the receiver is a representative, he is primarily a representative of the *debtor,* and the debtor's debtor, rather than a representative of the creditors; that in relation to the property of the insolvent, the receiver becomes its owner and stands in the shoes of the former owner. I disagree with such pronouncement. In the Schlesselman case we said:

"The receiver is something more than the representative of the debtor. He is the representative also of the creditors. Indeed he is primarily such. He may assert, as against the debtor, and those claiming under him, any right, which the creditors themselves could have asserted. We think his position is necessarily analogous to that of a creditor, who had taken the rent notes either as payment or security of a debt. In such a case the subsequent right accruing to the mortgagee to assert a lien, under his receivership clause, will not relate back so as to defeat the creditor, who already has a lien

upon the subject-matter. Our recent case of Lynch v. Donahoe [205 Iowa 537], 215 N. W. 736 [218 N. W. 144], is quite conclusive on this point. In that case we allowed a second mortgagee to take priority over a first mortgagee as to the rents and profits, because he asserted and acquired his lien first. This is the logical result of our holding that the receivership clause is merely remedial, and that it is not a present lien upon the crops or rents, but becomes such only as a part of the remedy in event of foreclosure. If Martin, or the Parnell Savings Bank, had rented this land to Andrew for the redemption period, he could have held it by right superior to the claim of the mortgagee. If Andrew, as such lessee, had sublet the farm to Hahn for an agreed rental, he could have held such rental.

"The necessary effect of the receivership was to convey to the receiver all the property of the bank of whatever kind, subject only to plaintiff's lien. Whatever rights the receiver acquired by such transfer, on April 14, 1927, may not be defeated by the assertion of a later lien under the receivership clause. The plaintiff had no lien on the rents and profits at the time of such transfer.

"This proposition is not affected by the fact that the receiver took subject to the mortgage. In the Lynch case, the second mortgage was subject to the first one. Nevertheless the mortgagee was permitted to retain the lien which he acquired by his prior proceeding."

It will be noted that the lease and rent notes involved above could have been transferred at any time prior to April 14, 1927, by the bank to any creditor and that such transfer would have taken priority over any alleged lien of the mortgagee at that time. If the receiver may be deemed primarily as the representative of the creditors of the insolvent, it would seem to follow logically that he, as such receiver, could have taken the lease and the notes for the benefit of *all* the creditors as effectively as a single creditor could have taken the same from the bank itself, before insolvency. Such is the controlling point in the Schlesselman case. The basic proposition of the majority opinion herein is:

"It is apparent, therefore, that, at the time this proceeding was commenced, Andrew, as receiver, was the fee title holder of said property, subject to the mortgage of the plaintiff."

It is further argued that the receiver stood in the shoes of the

mortgagor and that he could set up no other or superior right than the mortgagor himself could have done. The result of this reasoning is to deny any and all legal effect to the *priority of date* upon which the receiver took dominion of the property. Up to April 14, the mortgagee had asserted no right in the rents and profits. His lien had not attached. If a single creditor could have acquired this asset *before* insolvency, then it would seem to follow that the receiver could acquire it *upon* insolvency provided he is to be deemed as representative of the creditors of the insolvent. The answer to this question, as made in the majority opinion, is that the receiver became the owner of said property, "the fee title holder", and that he stood on an equality with the former owner,—not as of the date that he seized the property, but as of the later date when the mortgagee asserted its lien. In my judgment one of the fallacies of the argument is to assume that the receiver becomes the *owner* of the property. If a sheriff becomes the owner of the property, which he seizes under process, for the purpose of sale, then it might be said by analogy that a receiver becomes likewise the owner of the property of which he takes dominion for the purposes specified in the statute. Surely, however, the sheriff does *not* come into any ownership of property held under process; nor, for the same reason, can the receiver be said to come into ownership of the property, which is committed to his dominion. I submit that the Schlesselman case presents the true answer to this question. A receivership is a mere statutory method of sequestering the property of the insolvent debtor for the benefit of his creditors. Such sequestering, when accomplished, is as effective as when done by any other process. The dominion of the receiver becomes exclusive so far as subsequent rights are concerned. No new lien can arise and attach itself to the property thus sequestered. The receiver took dominion of the property subject to *existing* liens, and not subject to any *future* one. The lien now claimed by the mortgagee had not accrued to him on April 14, 1927.

I have no purpose herein to go into the merits of the doctrine, thoroughly established, that the receivership provisos in the mortgages, which we have had under consideration, are remedial only, and that they come into force and effect only as a part of the remedy. The cases on this subject are not confined to ours. Cases decided prior to about 1920 may be found collated and reviewed in large numbers in Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A.

L. R., pages 1400-1412, and a later supplemental list including our own cases may be found in Beindorf v. Thorpe, 126 Okl. 157, 259 P. 242, 55 A. L. R. 1020 et seq.

The fundamental proposition for which I am contending here is that the statutory receiver of an insolvent bank is primarily a representative of the creditors of such insolvent; that his seizure and dominion of the property of the insolvent is done primarily for the benefit of such creditors as a body; and that he had the same right to take and receive for the benefit of the body of creditors, the lease and rents in question, as any creditor would have had in his own behalf if no receivership had occurred. In support of this contention I bring into this discussion excerpts from a leading case, Blackman v. Baxter, Reed & Co., 125 Iowa 118, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707. This case deals with the question of trustees, administrators, and receivers and the relation they sustain to the creditors, and beneficiaries of their trusteeships.

In that case a suit was brought by the administratrix to set aside an alleged fraudulent conveyance executed by the decedent shortly before he died. Defense was offered that the rights of the administrator could rise no higher than those of her decedent and that the deed was binding upon the decedent, and therefore on the administrator, as such. The defense was not sustained. On the contrary, it was held that the primary function of the administrator was to protect the creditors of the estate and that she was their representative for that purpose. In the course of the discussion in the opinion it is made to appear that the rule invoked applies alike to administrators, receivers, trustees, and assignees for the benefit of creditors. I quote sufficient from the opinion of Mr. Justice Ladd in that case to indicate its strong support of the principle laid down in the Schlesselman case:

Quoting (page 121 of 125 Iowa, 100 N. W. 75, 76) :

"The interest of the heirs in an insolvent estate is purely technical. It is held by the administrator solely for the discharge of the debts of the deceased. This was recognized in Cooley v. Brown, 30 Iowa 470, where, in holding that an administrator might maintain an action to set aside the conveyance of deceased because voluntary or fraudulent, the court said:

" 'Ordinarily, it must be true that an administrator can maintain only such actions at law as the intestate might if living. This

must be invariably so in all actions for the enforcement of rights grounded upon the inheritance. So far as the administrator represents the heirs and the actions brought by him are to secure their rights and interests, he must be limited to such as the decedent himself might have maintained. But under the general statutes relating to the distribution of estates and the duties of administrators the latter are charged with certain trusts in favor of the creditors of the estate. They are required to collect the assets, and to pay them over to the estate creditors. Whatever ought to be applied to the payment of debts ought to be recoverable by the administratoi, *representing the rights and interests of the creditors.*' "

Quoting (page 122 of 125 Iowa, 100 N. W. 75, 76) :

"Thus in Graham Button Co. v. Spielmann, 50 N. J. Eq. 120, 24 A. 571, the court held that the moment a corporation is declared insolvent, and a receiver appointed to wind up its affairs, the legal effect of the statutes regulating such matters was to fasten the debts of the corporation upon its property; saying:

" 'From that time forth its property is by law appropriated exclusively and irrevocably to the payment of its debts. Power is conferred upon its receiver to take possession of all its property and convert it into money, to the end that the money thus obtained may be distributed among its creditors.' "

Quoting (page 123 of 125 Iowa, 100 N. W. 75, 77) :

"By the appointment of a receiver the rights of creditors to attach or levy on such property are suspended. The law thus disables the creditors from interfering with the property, or from in any way appropriating it for their sole benefit; but in so doing it does not lessen their rights with respect to such property, nor does it destroy them; it merely provides for their protection and enforcement in another way. And whenever the law thus disables creditors from helping themselves, whether by proceedings in bankruptcy or insolvency, or by the appointment of a receiver or otherwise, it provides for the enforcement for whatever rights they may possess against the property of the debtor, through the instrumentality of its *agent, the trustee, assignee, or receiver.* For the purpose of enforcing any such right which the creditor could have enforced for his sole advantage, and for the purpose of holding or taking any property which a creditor could hold or take by law, or for recovering back

any property of which a creditor could avail himself in payment of his debt, the trustee, assignee, or *receiver is, in effect, the creditor.*"

Quoting (page 124 of 125 Iowa, 100 N. W. 75,77) :

"In Schaller v. Wright, 70 Iowa 667, 28 N. W. 460, the assignee was held to be trustee for the creditors, and as such entitled to maintain an action to set aside the fraudulent conveyance of the assignor; the court saying: 'While, therefore, the husband (assignor) could not set aside the deed and claim the property, the trustee of the creditors, chosen by him, whose action is recognized and controlled by law, who is made an instrument by the law for awarding remedies to the creditors, is not subject to the rules and doctrines to be applied between the fraudulent grantor and grantee.' "

Quoting (page 125 of 125 Iowa, 100 N. W. 75, 77) :

" 'The creditors of a mortgagor do not cease at his death, and, so long as they continue to be such creditors, such mortgage is void as against them. By relation the executor or administrator became trustee for the creditors from the death of the mortgagor.' * * * 'The cases thus maintaining the right of an assignee, receiver, and executor or administrator of an insolvent estate, as representing the general creditors, to avoid in their interest a fraudulent or void chattel mortgage, we think correctly present the law upon the question. The doctrine is supported by sound reason, and comports with our ideas of justice in premises. The mortgage is without validity as to the creditors. As against them it is no mortgage, and represents no interest in the property.' "

There is a faltering note perceptible in some of our cases as though we hesitated to face the logic of our precedents. We have almost said in effect that though the mortgagee has no lien until he brings his foreclosure suit, yet he does have *something* that is the *potential equivalent* of a lien from the date of his mortgage. If in truth the mortgagee does, as of the date of his mortgage, acquire something that is the *equivalent* of a lien, then he acquires a *lien;* and nothing less. And vice versa. If he acquires no lien until he commences his foreclosure suit, then he acquires *no equivalent* of a lien, potential or otherwise. In other words, it cannot be said either directly or indirectly that the mortgagee has *no* lien, and yet has the *equivalent* of one. Logic has no evasions; neither can it be deceived.

Along the line here indicated, inconsistency to some degree may be found in some of our cases on this subject. But in the main our moorings have been firm until now. One of these moorings was our pronouncement in the Schlesselman case,—logically sound and self-evident as Aristotle himself. This pronouncement is now overruled. This commits us unavoidably to the only alternative argument left: that the lien of the mortgage begins, not with its foreclosure, but with an imaginary gestation period, which precedes its birth.