THE STATE NATIONAL BANK OF SPRINGFIELD, Appellee, *vs.* THE UNITED STATES LIFE INSURANCE COMPANY, Appellant.

*Opinion filed February 19, 1909.*

1. PARTIES—*parties to contract are the only parties necessary in specific performance.* The doctrine that all parties having an interest in the subject matter of the litigation must be made parties does not have full application to suits for specific performance of contracts, the general rule being that to such a suit no persons are necessary parties except the parties to the contract.

2. SAME—*an objection of non-joinder not made in trial court is not favorably received.* An objection of non-joinder of parties which is made for the first time in a court of review is not favorably received, and to be of avail in such case it must appear that the failure to make the omitted person a party will result in depriving that person of some material right.

3. SAME—*when insured is not necessarily a necessary party to specific performance against insurance company.* Where new life insurance policies are made out to a bank in continuation of policies assigned to the bank as collateral security for a debt of the insured, the only parties to the new contract of insurance are the bank and the insurance company; and the fact that the insured may have an equity in the contract does not necessarily require that he be made a party, in order to protect his interest, to a suit for specific performance by the bank against the company.

4. SAME—*when question of non-joinder will not be considered.* Where an insurance company does not raise in the trial court the question of non-joinder of parties in an action against it for specific performance of the contract of insurance, the Supreme Court will not consider the question whether any necessity existed for making the omitted persons parties for the purpose, alone, of protecting the insurance company's rights.

5. SPECIFIC PERFORMANCE—*when a supplemental bill does not change character of suit.* Where, after the filing of a bill for specific performance to compel an insurance company to issue and deliver an endowment policy, the time expires at which such policy would have been payable had it been issued, a supplemental bill asking a decree for the amount which would have been due on such policy at maturity does not materially change the nature of the suit, and it remains, in effect, one for specific performance.

6. INSURANCE—*doubtful language is construed most strongly against the company.* In determining the meaning of an insurance contract, if the terms thereof are doubtful or uncertain, the language used will be interpreted most strongly against the company.

7. SAME—*when endowment policy must be substituted on basis of the old policy.* Where an insurance contract is uncertain as to whether an endowment policy shall be substituted on the basis of the date of the old policy and the age of the insured at that time or the date of the new policy and the age of the insured at that time, the facts that the new policy states that it is issued pursuant to the old contract, and that it contains a rate table in which the company has underlined the age of the insured at the time the old policy was issued and the rate for endowment and other insurance at that age, warrant the conclusion that the date of the old policy and the then age of the insured were intended.

8. SAME—*when failure of insured to join in demand for substituting insurance is not fatal.* Failure of the insured to join with a bank in demanding a substitution in the form of the insurance is not fatal to a bill by the bank to compel the company to make such substitution where the policy then in force had been rightfully made payable to the bank, and the option to exchange it for other policies was thereby properly vested in the bank alone.

9. APPEALS AND ERRORS—*when admission of alleged improper testimony is immaterial.* Where the obligation of the insurance company to issue the policies demanded by the complainant in a bill for specific performance appears from the application, policies and the conditions and tables accompanying the policies, the admission of alleged incompetent testimony as to the complainant having advised with the company's general agent and as to the action of the company in other cases is immaterial.

APPEAL, from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is an appeal by the United States Life Insurance Company in the City of New York, a corporation, from a judgment of the Appellate Court for the Third District affirming a decree obtained by the State National Bank of Springfield, Illinois, the appellee, in the Sangamon county circuit court, requiring appellant to pay to appellee the sum of $7424.30, the amount found to be due from appellant as a result of its failure to execute and deliver to appellee certain policies of insurance.

The original bill, which was filed on April 3, 1905, sought to compel appellant to issue and deliver to appellee two policies of insurance for $10,000 each, upon the fifteen-year participating endowment plan, as of the date of December 22, 1890, each maturing December 22, 1905, upon the life of George M. Brinkerhoff.

On March 8, 1906, upon leave, appellee filed a supplemental bill, which alleged that the time when such endowment policies, had they been issued, would have been payable was December 22, 1905. The prayer was that a decree be entered in its favor for the amount which would have been due on said endowment policies at maturity, with interest thereon to the date of the decree, had said policies been issued by appellant, less certain deductions to which appellant was entitled.

Appellant answered both the original and supplemental bills. Replications were filed, and on June 6, 1905, the cause was referred to a master to take proofs and report the same. Upon the filing of the master's report the cause was heard in open court before the chancellor upon the evidence so reported and additional evidence taken before him,

and on June 11, 1907, the decree in favor of the appellee was entered.

On December 19, 1890, George M. Brinkerhoff, who was then fifty-one years of age, made application to appellant, through J. H. Strong, of Chicago, a general agent of appellant for the State of Illinois, for $20,000 of life insurance upon his own life, to be issued in the form of two policies of $10,000 each, upon the ten-year continuable term plan, for the benefit of his wife, Isabella G. Brinkerhoff. The application was signed by George M. Brinkerhoff and his wife, and contained, among others, the following provisions:

"This application and declaration shall, with the policy herein applied for, alone constitute the contract between me and the United States Life Insurance Company in the City of New York, and no information or statement, unless contained in this application, made, given, received or required by any person at any time, shall be binding on the company. * * * This application, its statements, representations and agreements, together with all conditions and stipulations contained in the policy hereby applied for, shall be binding on me and on any future legal holder of this policy."

In accordance with the application, on December 22, 1890, appellant issued two policies, identical in form, each for $10,000, upon the life of George M. Brinkerhoff, numbered, respectively, 65,870 and 65,871. Among the so-called "conditions" made part of the contract and found on the back of each policy were the following:

"VI.—This insurance is renewable at the end of the specified period, (under a new policy for same amount and of like tenor as this policy, or for same amount under any other form of policy then issued by this company,) at the option of the holder hereof, without medical examination, provided the holder hereof makes written application for such new policy, and by a proper instrument in writing sur-

renders this policy to the company at its said office while in force and pays the premium upon such new policy according to the terms thereof. The legal holder or holders of this policy may, without medical examination, change this policy, at any time during its continuance in force, to any other plan issued by said company at such time, by payment to the company of a sum equal to the difference in premiums, with interest at the rate of four per cent per annum, compounded.

"VII.—The said company agrees, in case the life insured survives to the end of the specified period, if this policy be then in full force, to pay to the said George M. Brinkerhoff the dividend apportioned to this policy from its profits by said company."

On October 19, 1891, George M. Brinkerhoff and his wife assigned the policies to appellee to secure an indebtedness from him to it. The first two annual premiums upon each policy were paid by Brinkerhoff and the remainder were paid by appellee. These payments were all made to Strong, with whom much of the business concerning the policies was transacted.

Shortly before the expiration of these policies appellee concluded to continue the insurance upon Brinkerhoff's life and consulted Strong in regard to the best form of a policy. Strong advised appellee to continue the insurance in policies of the same form as those originally issued; that after paying five annual premiums, in addition to what had been paid on the assigned policies, the appellee could change to fifteen-year participating endowment policies, bearing the date of the first policies and at a premium rate fixed at the age of fifty-one years, upon the payment of the differences in premiums between the two plans of insurance, with four per cent interest per annum, compounded. Such endowment policies would become payable December 22, 1905.

Accordingly appellee and George M. Brinkerhoff made application for two policies upon the ten-year continuable

term plan.   The applications were in the following form and were identical, except that one referred to policy No. 65,870 and the other to No. 65,871:

"To the United States Life Insurance Company in the City of New York:

"The undersigned, owners of policy No. 65,870 on the life of George M. Brinkerhoff, hereby request the United States Life Insurance Company in the City of New York to issue a policy in place and renewal thereof, of like amount and tenor, for another term of ten years, and herewith surrender the said policy to be canceled on the issue of said new policy, and agree to pay the annual premium of $609.20 on the 22d day of December in each year. And in consideration thereof said undersigned do hereby constitute the original application for said policy No. 65,870, together with this present application, the basis of and part of the contract of insurance under the new policy hereby solicited.

"Dated Springfield, Ill., December 18, 1900.

STATE NATIONAL BANK, SPRINGFIELD, ILL., *Assignee,*
J. F. BUNN, *Cashier,*
and GEORGE M. BRINKERHOFF."

Pursuant to these applications, the appellant, on December 22, 1900, issued upon the life of George M. Brinkerhoff two policies of insurance, each for the sum of $10,000, upon the same plan as the former ones, numbered, respectively, 100,294 and 100,295, payable to appellee, its successors or assigns, upon proof of the death of the said Brinkerhoff within ten years from the dates of said policies.   Each of the last two policies so issued provided, by the conditions which were made part thereof, that upon any anniversary of the date of issue, the policy "then being in force, it may be renewed for another term or changed to any other participating plan issued by the company, without medical examination, upon payment of the premium corresponding to the advanced age of the insured, or to a participating policy bearing original date and at the premium rate of the original age, upon payment of the difference in premiums, with four per cent interest per annum, compounded."   Upon the margin of each of the policies issued in 1900 was written in ink: "This policy is issued

pursuant to the contract of insurance made December 22, 1890, as expressed in policy No. 65,870 (65,871) and in place of said policy, and for that reason does not require a tax stamp under any statute of the United States."

Under the heading of "Benefits and conditions" upon each of the policies issued in 1900 appears a table of rates, made a part of the conditions by reference, showing various kinds of policies issued by appellant and the rates of premium, varying according to the age of the applicant for insurance, in part as follows:

"Annual premium rates per $1,000.00 of insurance on various plans:

|  | Life | 5 payment life | 10 payment life | 15 payment life | 20 payment life | Endowment in 10 years | Endowment in 15 years | Endowment in 20 years |  |
|---|---|---|---|---|---|---|---|---|---|
| 25 | $ 19.89 | $ 73.87 | $ 42.56 | $ 32.34 | $ 27.39 | $103.91 | $ 66.02 | $ 47.68 | 25 |
| * | * | * | * | * | * | * | * | * | * |
| 51 | 49.40 | 134.80 | 80.14 | 62.98 | 55.38 | 113.64 | 77.77 | 61.90 | 51 |
| * | * | * | * | * | * | * | * | * | * |
| 65 | 102.55 | 199.48 | 129.18 | 110.16 | 104.10 | 143.16 | 114.16 | 104.91 | 65 |

The numerals which are above underscored were underscored on each of the policies in red ink by pen, and designate in the first column the age of Brinkerhoff on December 22, 1890, and the figures to the right of the age and immediately above the line show the amount of premium due each year on the various kinds of policies per $1000 of insurance, the applicant's age being fifty-one years.

On December 22, 1904, appellee tendered to appellant the amount necessary to cover the differences in the premiums on the policies of the kind it had been carrying and the premiums on two $10,000 fifteen-year participating endowment policies, with interest on such differences at four per cent per annum, compounded, the endowment policies to be dated December 22, 1890, and the amount of the premium to be fixed by the age of Brinkerhoff on that date, which age was fifty-one years. Appellee also then demanded that appellant issue to it two such endowment policies. Appellant refused the tender and declined to issue the policies bearing the date December 22, 1890, but offered, upon proper payment, to issue such policies dated De-

cember 22, 1900, the premium rate to be fixed according to Brinkerhoff's age on the date last mentioned, which age was sixty-one years. Thereupon appellee filed its original bill for specific performance.

Appellant contends (1) that there was a fatal lack of parties; (2) that it was justified in refusing to issue the policies because Brinkerhoff and his wife did not join in the request for the exchange of policies; (3) the court erred in passing on objections to evidence; (4) the court erred in the interpretation of the contract of insurance; and (5) the amount decreed to be due appellee is excessive.

WILLIAM A. ELLIOTT, ISHAM, LINCOLN & BEALE, and CONKLING & IRWIN, for appellant:

Appellee originally obtained the contracts for insurance in suit as security for an indebtedness due appellee from George M. Brinkerhoff, the insured, under assignments made by Brinkerhoff and his wife, Isabella G. Brinkerhoff, the beneficiary named in the first term policies. The indebtedness from Brinkerhoff to appellee continues to exist, and, so far as the record shows, appellee still holds the contracts as security for the debt. *Stone Co.* v. *Whalen,* 151 Ill. 472; *Bearss* v. *Ford,* 108 id. 16.

Although absolute in form, the assignments of the contracts for insurance were intended only as security for the indebtedness due appellee from George M. Brinkerhoff, and accordingly Brinkerhoff and his wife still have a beneficial interest in the contracts, and could demand a return of the policies by paying off the existing indebtedness. *Sutphen* v. *Cushman,* 35 Ill. 186; *Bearss* v. *Ford,* 108 id. 16; *Cassem* v. *Heustis,* 201 id. 208; *Keithley* v. *Wood,* 151 id. 566.

Having a beneficial interest in the policies, both Brinkerhoff and his wife should have been made parties to the suit. *Smith* v. *Brittenham,* 109 Ill. 540; *Knopf* v. *Real Estate Board,* 173 id. 196; *Gordon* v. *Johnson,* 186 id. 18; *Cowan* v. *Kane,* 211 id. 572; *Abernathie* v. *Rich,* 229 id.

412; Story's Eq. Pl. sec. 153; *Kittle* v. *VanDyck,* 1 Sandf. Ch. 76; *Hobart* v. *Abbott,* 2 P. Wms. 643; *Cook* v. *Bidwell,* 8 Fed. Rep. 452; *Johnson* v. *Hart,* 3 Johns. Cas. 322; *Thompson* v. *McDonald,* 22 N. C. 463; *Miller* v. *Henderson,* 10 N. J. Eq. 320; *Betton* v. *Williams,* 4 Fla. 11.

The failure to make Brinkerhoff and his wife parties to the suit is reversible error, although the objection was raised for the first time in the Appellate Court. *Knopf* v. *Real Estate Board,* 173 Ill. 196.

Inasmuch as Brinkerhoff and his wife still have a beneficial interest in the contracts for insurance they should have joined with appellee in the request for the exchange of the policies, and as they failed to do so, appellant was justified in refusing to issue the new policies requested by appellee. *McDowell* v. *Steel Works,* 124 Ill. 491; *Manton* v. *Robinson,* 19 R. I. 405; *Toplitz* v. *Bauer,* 161 N. Y. 325.

PATTON & PATTON, for appellee:

The assignment of errors upon the question of parties is not well taken, because the suit is upon policies issued directly to appellee and is not upon the policies assigned by the Brinkerhoffs to appellee, and therefore they were not necessary parties. *Insurance Co.* v. *Hervey,* 34 Ill. 46; *Washburn Manf. Co.* v. *Fence Co.* 109 id. 71; *Railroad Co.* v. *Elevator Co.* 153 id. 70; *Bragg* v. *Olson,* 128 id. 540; *Gibbs* v. *Blackwell,* 37 id. 191; *Insurance Co.* v. *Foster,* 90 id. 121; *Insurance Co.* v. *Pacaud,* 150 id. 245.

If appellant regarded the Brinkerhoffs as necessary parties it should have demurred to the bill. *Grier* v. *Puterbaugh,* 108 Ill. 602; *Portones* v. *Badenoch,* 132 id. 377.

This is a suit for the specific performance of a contract, and in such case no persons are necessary parties except the parties to the contract itself. *Gibbs* v. *Blackwell,* 37 Ill. 191; *Washburn Manf. Co.* v. *Fence Co.* 109 id. 71; *Wallace* v. *Taylor,* 8 Wall. 557; Fry on Specific Perf. sec. 79; Pomeroy on Contracts, sec. 483; *Cook* v. *Brown,*

11 Md. 158; *Moulton v. Chaffee,* 22 Fed. Rep. 26; *Deniston v. Hoagland,* 67 Ill. 265; *Burton v. Perry,* 146 id. 103.

When the assigned policies expired by limitation the Brinkerhoffs' beneficial interest in them ceased, and the policies in controversy were issued directly to the appellee bank, which was a creditor of Brinkerhoff, and consequently had an insurable interest in his life. *Martin v. Stubbings,* 126 Ill. 387; *Delaney v. Delaney,* 175 id. 187; 1 Cooley on Insurance, 294; 15 Ency. of Pl. & Pr. 596.

The policies are payable to the appellee, and Brinkerhoff had no interest in them. *Amick v. Butler,* 111 Ind. 578; *Ferdon v. Canfield,* 104 N. Y. 143; *Insurance Co. v. Lucks,* 108 U. S. 498; *Glanz v. Gloeckler,* 104 Ill. 573; Bliss on Life Insurance, 517; *Bank v. Hume,* 128 U. S. 195.

A life insurance policy, unlike a policy upon property, is not a contract of indemnity. It is an agreement to pay a pre-determined fixed sum, and the creditor beneficiary may recover on the policy although the debt may have been paid, the debtor discharged in bankruptcy, or though at the time of the maturing of the policy the creditor had no insurable interest in the life of the assured. *Ferguson v. Insurance Co.* 32 Hun, 306; *Insurance Co. v. Hennessy,* 99 Fed. Rep. 64; *Conway v. Caswell,* 121 Ga. 254; *Townsend v. Tyndale,* 165 Mass. 293; *Rawls v. Insurance Co.* 36 Barb. 357; *Scott v. Dickson,* 108 Pa. St. 6; *Insurance Co. v. Bailey,* 13 Wall. 616; *Insurance Co. v. Schaefer,* 94 U. S. 457; *Bank v. Hume,* 128 id. 205; *Amick v. Butler,* 111 Md. 578; *Rittler v. Smith,* 70 id. 261; *Insurance Co. v. Wagner,* 27 Barb. 354; *Olmstead v. Keyes,* 85 N. Y. 293; *Wright v. Life Ass.* 118 id. 237.

Having no beneficial interest in the policies in controversy, consent of Brinkerhoff was not necessary to the demand for the policies which was made by the appellee. It is only where the party having a substantial or beneficial interest is omitted that advantage can be taken on appeal, as was the case in *Knopf v. Real Estate Board,* 173 Ill. 196.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The contract of insurance was originally assigned to the appellee as collateral security for a debt owed to it by George M. Brinkerhoff. It does not appear that such interest as then remained in Brinkerhoff and wife has ever been extinguished. Though not raising this question in the circuit court, appellant vigorously contends here that there is a fatal defect of parties because Brinkerhoff and wife were not made parties to the suit. Whatever may have been the situation earlier, after the issuance of the policies in 1900 the only parties to the contract of insurance were appellee and appellant, and the bill as originally filed was purely a bill for specific performance of a contract. Conceding that the Brinkerhoffs have an equity in the contract of insurance, it does not necessarily follow that they should have been made parties to the bill for specific performance. (*Gibbs* v. *Blackwell,* 37 Ill. 191; *Deniston* v. *Hoagland,* 67 id. 265; *Washburn & Moen Manf. Co.* v. *Wire Fence Co.* 109 id. 71; *Burton* v. *Perry,* 146 id. 71.) The general doctrine that all parties having an interest in the subject matter of the litigation must be made parties does not have full application to suits for specific performance of contracts, the general rule being, that to such a bill no persons are necessary parties except the parties to the contract itself. In this case the objection to the non-joinder was first taken in the Appellate Court, and an objection so taken is not favorably received. To be of avail in such case it must appear that the failure to make the omitted person a party will result in depriving that person of some material right. (*Washburn & Moen Manf. Co.* v. *Wire Fence Co. supra.*) It does not appear here but that the equities, if any, which the Brinkerhoffs have in the contract of insurance may hereafter be fully protected and enforced by suit without respect to the event of this cause. As appellant did not raise the question in the circuit court we will not con-

sider whether any necessity existed for making the Brinkerhoffs parties for the purpose, alone, of protecting the appellant's rights. The only change made in the character of the litigation by the supplemental bill was to require the appellant to account for the value of the endowment policies on the date at which they would have matured had they issued as prayed by the original bill. The date of such maturity arrived after filing the original and before filing the supplemental bill. The suit still remained, in effect, a suit for specific performance.

The principal question in the case is whether, on December 22, 1904, appellee had the right to exchange the two policies which it then held for two fifteen-year participating endowment policies of $10,000 each, bearing date December 22, 1890, with a premium rate fixed by the age of Brinkerhoff at the last mentioned date, which age was fifty-one years, upon the payment by appellee to appellant of the differences in premiums between the two forms of insurance, with four per cent interest per annum, compounded, from the respective dates when premiums fell due. Appellant contends that it could not be required to issue such policies, but that the endowment policies which it could be required to issue were policies of the date of the policies of 1900, to-wit, December 22, 1900, based upon a premium rate fixed by the age of Brinkerhoff at the last mentioned date, which age was sixty-one years. It is not questioned that the owners of the policies issued in 1890 would have had the right, prior to the maturity of those policies, to exchange them for precisely such endowment policies as the appellee sought by the original bill upon making payment according to the basis upon which appellee offered to make payment in 1904, but it is contended that by taking the two policies of 1900 the right to obtain the endowment policies of date December 22, 1890, etc., ended. Upon the margin of each of the policies of 1900 appears an endorsement in writing made by appellant, reciting that the policy was is-

sued pursuant to the contract of insurance made in 1890. Each of the policies of 1900 provided, by the recitals of certain "conditions" annexed thereto and made part thereof, that it might be changed upon any anniversary of its date, the policy then being in force, "to a participating policy bearing original date and at the premium rate of the original age, upon payment of the difference in premiums, with four per cent interest per annum, compounded." Each policy also had attached a table of rates, to which the language last quoted had reference. That table of rates was printed, the first column in the table being figures representing age, in years, from twenty-five to sixty-five, inclusive, and opposite each year of age so shown were figures showing the premium per thousand dollars for various kinds of insurance written by appellant, including fifteen-year endowment. Across this table, immediately below the age fifty-one and the figures set opposite thereto, was a line drawn by pen in red ink. The amount of the annual premium per thousand dollars of insurance at age fifty-one for a fifteen-year endowment policy was so shown to be $77.77. The evidence shows that this line was drawn on each policy before the policies left the general offices of appellant in New York City and that each policy was mailed by the appellant with this red line thereon. In each of the policies dated December 22, 1900, the age of the insured is stated as sixty-one years, and the question is whether, in construing the contract of insurance, the words "original date" and "original age," in the language above in this opinion quoted from the "conditions," mean the date of the policy of December 22, 1900, and Brinkerhoff's age on that date, which was sixty-one years, or mean the date of the first policies, which was December 22, 1890, and his age as set out in the first policies, which was fifty-one years. In determining this question we must apply the rule that in case of doubt or uncertainty in the terms of a life insurance policy the language used is to be interpreted most strongly against the

company. Each of the policies secondly issued recites that
it is issued pursuant to the contract of insurance made De-
cember 22, 1890, and upon each, as above recited, the age
fifty-one and the figures opposite thereto are underlined in
red ink by pen. We think these facts warrant the conclu-
sion that the words in question, "original date" and "orig-
inal age," had reference to the date of the first policies and
Brinkerhoff's age at the time they issued. The red ink
line was evidently drawn for the purpose of indicating the
"original age" and the rates at which the new policy could
be exchanged for another. No other purpose for which it
could have been drawn appears. It is true that Mr. Stan-
den, who was actuary of appellant in 1900, testified that the
red lines were not placed on the policies in the company's
offices, but that if they were drawn upon the policies in those
offices they were so drawn surreptitiously after the policies
had been signed by the officers. It is clear from this man's
entire testimony that he did not have personal knowledge
which would enable him to make either of these statements.
He was not one of the officers who signed these policies.
He did not know whether he ever saw these policies before
they left appellant's offices. Several officers of the com-
pany other than the actuary had authority to make and al-
ter contracts. His testimony in this regard proves nothing,
and leaves undisputed the evidence which does show that
the lines were drawn upon the policies before they left the
appellant's New York offices.

At the time of the maturity of the policies issued in
1890, and for many years prior thereto, Joseph H. Strong
had been a general agent for appellant, with offices in the
city of Chicago. Appellee was permitted to prove, over ob-
jection, that prior to the maturity of those policies it con-
ferred with Strong, and was advised by him that if it
surrendered the first policies upon their maturity and took
in lieu thereof new ten-year policies of the same charac-
ter, it would have the right, on December 22, 1904, to make

238—11

the exchange which it afterward, at that time, sought to make. Testimony was also admitted, over objection, tending to show that the appellant had on several occasions permitted exchanges to be made, or had been willing to permit exchanges to be made, identical in character with the exchange which it refused to make at the request of appellee. Whether the testimony objected to was properly admitted we deem immaterial, as the obligation of appellant to issue the policies demanded on December 22, 1904, appears from an examination of the applications, the policies, their endorsements, and the "conditions" and tables accompanying the policies. The decree must have been the same had the evidence objected to been excluded.

It is also urged that the proof for appellee was fatally defective because it did not show that the Brinkerhoffs acquiesced in appellee's election to take the endowment policies which it demanded on December 22, 1904. The policies of 1900 were by appellant rightfully made payable to appellee, and the options to exchange for other policies were properly vested in the appellee, alone, by those policies, in accordance with rights transferred to appellee by the Brinkerhoffs. Under these circumstances failure to show acquiescence of the Brinkerhoffs in the exercise of the options would not defeat the bill.

It is also contended that the amount decreed to be paid appellee was excessive. We think the evidence showed that the fifteen-year policies at their maturity would have been of the value of $23,400, and that the amount chargeable against appellee, on account of the difference in premiums, at the time the endowment policies would have matured, was $16,377.49. The difference between these two amounts is $7022.51. That balance, with interest thereon at the proper rate to the date of the decree, makes an amount somewhat in excess of the amount awarded.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*