## FEDERAL LIFE INSURANCE COMPANY *v.* KERR.

[No. 21,551. Filed October 15, 1909. Rehearing denied March 16, 1910.]

1. INSURANCE.—*Reinsurance.*—*Contracts.*—*Date of.*—*Presumptions.* —A certificate of reinsurance issued to a policy-holder, bearing the same date as the contract of transfer and reinsurance executed by the original and reinsuring companies, must be presumed to have been executed at least ten days after the execution of such contract of reinsurance, since under §4753 Burns 1908, Acts 1897, p. 318, §15, policy-holders are given ten days in which to elect to

be transferred to some other company than the reinsuring company. pp. 616, 629.

2. CONTRACTS.—*References to Other Writings.—Breach.—Complaint.—Exhibits.*—Ordinarily, where a contract in writing refers to another writing which is necessary to the construction of the former, or as defining rights thereunder, a complaint founded on such contract should set out the writing referred to. p. 617.

3. CONTRACTS.—*Collateral.— Insurance.— Building and Loan.—Complaint.*—In insurance and building and loan cases the complaint need not set out collateral instruments referred to in the contract sued on. p. 617.

4. INSURANCE.—*Policies.—Construction.—Complaint.*— All doubts in insurance policies are construed in favor of the assured, such policies having been carefully prepared by the companies, and the assured having nothing to do therewith. p. 618.

5. INSURANCE.— *Reinsurance Certificates.— Collateral Contracts.—Complaint.*—A complaint setting out the original insurance policy together with a reinsurance certificate reciting that it "constitutes policy 6,103," and that "this policy and said certificate to which it is attached constitute the holder thereof a policy-holder," and that "no change of policy or certificate, further than the attachment * * * is necessary," is sufficient without setting out the contract of reinsurance between the companies, although such contract is referred to in such certificate as defining the rights of the assured. pp. 619, 628.

6. INSURANCE.—*Reinsurance.— Statutes.— Contracts.—* A statute prescribing the terms by which one insurance company may reinsure and take over the business of another company will be considered as entering into and forming a part of the contract of reinsurance. pp. 619, 625.

7. INSURANCE.—*Reinsurance.—Alteration of Policies.*—The statute providing for the transfer and reinsurance of an insurance company's business (§4753 Burns 1908, Acts 1897, p. 318, §15) contemplates the assumption of the obligations of the policies issued by such company, no right of alteration being given. pp. 619, 623, 625, 630.

8. INSURANCE.—*Reinsurance.—Waiver of Policy Provisions.—Return of Money.*—Where a reinsuring company attempts to avoid the liability imposed by the original policy, it must show that assured knew of the changed liability and expressly consented thereto; and no waiver is shown where the reinsuring company exacted the sums provided for in the original policy and made no offer to return them. p. 622.

9. INSURANCE.—*Reinsurance.—Reserve.—Presumptions.*—The presumption is that an insurance company required by law to maintain a reserve, performed its legal duty in that respect. p. 623.

10. INSURANCE.—*Reinsurance.—Reserve.—Trusts.*—A reserve fund held by an insurance company constitutes a trust in favor of the policy-holders, and a reinsurance of the business of such company by another does not alter the character of such fund. p. 623.

11. INSURANCE.—*Conversion of Reserve.—Rights of Policy Holders. —Action.*—Policy-holders probably have a right of action for the conversion of the legal reserve belonging to their company. p. 623.

From Dubois Circuit Court; *E. A. Ely,* Judge.

Action by William R. Kerr against the Federal Life Insurance Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10. *Affirmed.*

*C. A. Atkinson, J. W. Wilson, L. A. Whitcomb, D. D. Corn* and *A. C. Harris,* for appellant.

*E. P. Richardson* and *A. H. Taylor,* for appellee.

MYERS, J.—The Model Life Insurance Company, a mutual company organized under an act of the General Assembly of March 9, 1897 (Acts 1897, p. 318, §4739 *et seq.* Burns 1908), issued a policy of insurance for $1,000 on the life of Clara A. Kerr, dated March 4, 1902, appellee herein, her husband, being named as beneficiary.

On March 12, 1904, appellant herein entered into a written contract with the Model Life Insurance Company, under the provisions of §4753, *supra,* for the transfer by the latter to the former of all its property, assets and risks, the consideration being the conditional assumption of the obligations of the Model Life Insurance Company. Appellant then issued what is called a policy of reinsurance, as follows:

"Incorporated Under the Laws of Illinois.
Federal Life Insurance Company.
Number 6,103.                           Amount, $1,000.
Chicago.

This policy of reinsurance is issued to Clara Kerr, of Algiers, county of Pike, State of Indiana, to be attached to certificate or policy No. 3,251, of the Model Life Insurance Company of Indiana, and subject to all the provisions of the contract of reinsurance between

said Model Life Insurance Company and this company, dated March 12, 1904, and constitutes policy 6,103 of the Federal Life Insurance Company, of Chicago, Illinois. Whereas, said Federal Life Insurance Company does hereby assume the foregoing certificate or policy of said, The Model Life Insurance Company, in accordance with the terms of said reinsurance contract: Now, therefore, this policy and said certificate to which it is attached, constitute the holder thereof a policy-holder of said Federal Life Insurance Company; and said Federal Life Insurance Company hereby assumes, and guarantees any obligation, or indebtedness which may hereafter be established on account of such original policy, or certificate, subject to the terms and conditions hereof, and of said reinsurance contract; provided, that all premiums or assessments required to maintain such policy or certificate in force shall be paid to said Federal Life Insurance Company, as provided in said original policy or certificate of said reinsurance contract. No change of policy or certificate, further than the attachment of this reinsurance policy to said policy or certificate of said Model Life Insurance Company is necessary, in order to bind said Federal Life Insurance Company to the payment of the same, subject to the provisions hereof, and of said reinsurance contract. The receipt and retention of this reinsurance policy by the policy-holder above named, shall operate as a ratification of the obligation hereby assumed by the Federal Life Insurance Company, and as an acceptance of the terms hereof by said policy-holder. In witness whereof, said Federal Life Insurance Company has caused these presents to be signed by its president and assistant secretary, at the city of Chicago, State of Illinois, this 12th day of March, 1904.

> W. E. Brimstin, Asst. Sec.
> Isaac Miller Hamilton, Pres.''

This certificate is dated the same day as the contract of transfer and reinsurance, though manifestly not executed on that date, because it must be presumed that the statutory period of ten days intervened, during which any certificate holder might elect to be transferred to some other company, under §4753, *supra*. The insured died December 8, 1904.

Appellee set out in his complaint the original certificate and the certificate of appellant. A demurrer for want of facts was addressed to this complaint and overruled, and an exception reserved. The sufficiency of the complaint is vigorously challenged, on the ground that the transfer and the so-called reinsurance contract are so referred to in the agreement denominated the new policy as to become a part of it, to the extent that it must be made an exhibit of the complaint under our code, requiring written instruments, or copies thereof, upon which "any pleading is founded," to be filed with the pleading. There are two distinct lines of cases in this State involved in this contention. One line holds that where one instrument refers to another which is necessary to its construction, or defines the conditions of rights claimed under it, or depends for its validity upon conditions expressed in another instrument, said instruments, when made the basis of a pleading, must be set out by copy or in the original. For this line of cases see *Carnahan* v. *Campbell* (1902), 158 Ind. 266; *Landon* v. *White* (1885), 101 Ind. 249; *Potts* v. *Hartman* (1885), 101 Ind. 359; *Borchus* v. *Huntington Bldg., etc., Assn.* (1884), 97 Ind. 180; *Wilson* v. *Wilson* (1882), 86 Ind. 472; *Busch* v. *Columbia City, etc., Sav. Assn.* (1881), 75 Ind. 348; *Titlow* v. *Hubbard* (1878), 63 Ind. 6.

Another line of cases is that presented under building contracts, building and loan association notes, and contracts of insurance, under which it is held that collateral instruments referred to in the instrument pleaded, or as inducements to contracts or agreements, which, though referring to other instruments, are complete in themselves, need not be copied, filed or exhibited. Of such are applications for insurance, specifications for buildings and machinery, and the like. For cases of this class, see *Bird* v. *St. John's Episcopal Church* (1900), 154 Ind. 138; *Phoenix Ins. Co.* v. *Stark* (1889), 120 Ind. 444; *Penn Mut. Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 50 Am. Rep. 769; *Ander-*

*son Bldg., etc., Assn.* v. *Thompson* (1882), 88 Ind. 410; *Wilson* v. *Wilson, supra; Continental Life Ins. Co.* v. *Kessler* (1882), 84 Ind. 310; *Cassaday* v. *American Ins. Co.* (1880), 72 Ind. 95; *Mutual Benefit Life Ins. Co.* v. *Cannon* (1874), 48 Ind. 265; *Commonwealth Ins. Co.* v. *Monninger* (1862), 18 Ind. 352; *Buckeye Mfg. Co.* v. *Woolley, etc., Machine Works* (1900), 26 Ind. App. 7; *Indiana Farmers, etc., Ins. Co.* v. *Byrkett* (1884), 9 Ind. App. 443; *Evansville, etc., R. Co.* v. *Frank* (1891), 3 Ind. App. 96.

The distinction between these two lines of cases may not be at once apparent, in view of the general doctrine that practically all kinds of contracts are to be construed according to the same rules, but there is a distinction in practice, with respect to insurance contracts, in that where they are doubtful or equivocal they will be construed against insurance companies, based upon the theory that such contracts are carefully prepared by the companies themselves, their effect carefully weighed, and the parties do not deal upon an equal footing in fact. They should be liberally construed in behalf of the insured, so as to effectuate their purpose, and doubts are to be solved in favor of the insured, and that strict construction will be invoked against forfeitures. *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651; *Rogers* v. *Phenix Ins. Co.* (1890), 121 Ind. 570; *Penn Mut. Life Ins. Co.* v. *Wiler, supra; Grant* v. *Lexington Fire, etc., Ins. Co.* (1854), 5 Ind. 23, 61 Am. Dec. 74; *Union Life Ins. Co.* v. *Jameson* (1903), 31 Ind. App. 28; *Hanover Fire Ins. Co.* v. *Dole* (1898), 20 Ind. App. 333; *Union Cent. Life Ins. Co.* v. *Jones* (1897), 17 Ind. App. 592; *State Nat. Bank* v. *United States Life Ins. Co.* (1909), 238 Ill. 148, 87 N. E. 396; *Iowa Life Ins. Co.* v. *Haughton* (——), (Ind. App.), 87 N. E. 702; *Aetna Ins. Co.* v. *Strout* (1896), 16 Ind. App. 160; *Reynolds* v. *Commerce Fire Ins. Co.* (1872), 47 N. Y. 597; *Foot* v. *Aetna Life Ins. Co.* (1875), 4 Ins. L. J. 260; *Supreme Tent, etc.,* v. *Ethridge* (1909), 43 Ind. App. 475,

Appellant is in no situation to raise the question upon the complaint. The certificate, while referring to another instrument for the conditions of its issuance, specifically provides that it "constitutes policy 6,103" of appellant company, and "this policy and said certificate to which it is attached constitute the holder thereof a policy-holder," etc., and "no change of policy or certificate, further than the attachment * * * is necessary." The conditions of the reinsurance bear a very close analogy to applications for insurance, at least the certificate is so equivocal in character that the doubt ought to be resolved against the insurer, under the well-established rule, that where the contract is capable of two constructions, the one most favorable to the insured shall be adopted. It is, in fact, treated in the answers as the reinsurance policy. *Standard Life, etc., Ins. Co.* v. *Martin* (1893), 133 Ind. 376; *Rogers* v. *Phenix Ins. Co., supra; Penn Mut. Life Ins. Co.* v. *Wiler, supra; Thompson* v. *Phenix Ins. Co.* (1890), 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; *Imperial Fire Ins. Co.* v. *Coos County* (1894), 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231.

The statute under which the transfer is authorized and was made is a public law, and must be regarded as entering into the contract itself. That statute, for reasons which appear in the discussion of the answers, contemplates the transfer of all the risks as they stand related to the original insurer at the time of the transfer. The risks are not to be discriminated against by special contracts, which if they can be made without restriction, can be made to destroy. Whatever force the so-called reinsurance contract may have, if it has any, beyond the assumption of liability, is the obligation assumed by the reinsurer of that which the former contract and law impose. The certificate is the written evidence of that obligation, and the so-called reinsurance contract itself is immaterial, and is not the basis of the action. It need not be set out or ex-

hibited in the complaint, or its absence be accounted for. Whatever force it may have is a matter of defense.

The original certificate issued by the Model Life Insurance Company contains the provision that "it shall be indisputable after two years from its date of issue for the amount due, provided the premiums are duly paid as set forth above." At the date of making the transfer agreement, the full term of two years had expired. The transfer agreement contains a great many provisions, and covers thirty-one typewritten pages of the record. It discloses that the Model Life Insurance Company transferred all its assets and property of every kind to appellant, and retired from business, and the latter assumed the payment of all risks, indicated by a schedule attached, in which was included the certificate to appellee's wife.

By four paragraphs of answer, appellant set up the agreement of transfer, which contains, among other provisions, the following:

"The assumption of any liability in respect to any certificate or policy hereunder is conditioned upon the literal and actual truth of each and every statement, representation and warranty contained in the application to said first party for such certificate or policy. * * * The party of the second part expressly disclaims any intention to assume, or any assumption of liability in respect to, any certificate or policy, unless each and every statement, warranty and representation contained in the application and medical examination for it, * * * shall be absolutely true, full and complete, in every respect."

Appellant by the first paragraph of answer sets out the application originally issued to the Model Life Insurance Company, in which there is an express warranty that all statements and answers made to the agent and to the medical examiner are full, complete and true, and are offered as the consideration for the contract. It is averred that the decedent had answered that she was in perfect health, so far as she knew and believed; that she had three brothers, two of

whom were living and in good health, and one had died at the age of twenty-eight, of pneumonia, and that it was not possible or probable that he had died of consumption or cancer; that she had three sisters living, all in good health, and that no two members of her family, including uncles or aunts, had died of consumption. It is averred that her brother had died of consumption, that decedent had consumption and died from it, that her sister had consumption and afterward died from it, and that an uncle and aunt, at and prior to the time of the application, had consumption. It is not averred that the decedent knew these facts, but the answers are predicated on the theory that the statements were made as warranties, and that they must therefore be literally true.

The second paragraph is substantially the same as the first, except that it is alleged that the statements of the insured were false and untrue, and made for the fraudulent purpose of obtaining the insurance, and of defrauding the Model Life Insurance Company; that assured had consumption when she died; that her brother, stated to have died from pneumonia after a three months' illness, prior to which he had been in good health, had, in fact, been sick for a longer period than three months, and it was possible that he died from consumption or cancer; that her three sisters, stated in her application to be in good health, had consumption, and one shortly afterward died of consumption, and that an aunt and an uncle had died of consumption.

The fourth paragraph of answer is similar to the second, except that it is averred that her three brothers had consumption; that one of them had died from that malady, and not pneumonia, as stated; and that one of her sisters died of consumption. Said answer named an uncle and an aunt who had died of consumption.

The fifth is substantially the same as the second, except that it is averred that the statements of the insured as to the condition of her health, and the causes of death of the named relatives, were false and fraudulent, and made for the pur-

pose of concealing the facts, and fraudulently obtaining the insurance, and defrauding the company. Demurrers were sustained to these answers, and the cause went to trial on a general denial.

Appellee seeks to avoid these facts on the sole ground of the incontestability clause in the original certificate, upon the theory that after two years incontestability was a vested right, and could not be disturbed by any agreement made between the companies.

It may be that a strict construction of the contract of reinsurance would lead to the conclusion that this provision was waived by the new contract, but as we have seen, the 8. contract is not to be thus construed; rather should it receive a liberal construction. The parties did not deal upon equal terms, as in case of private contracting parties. Appellee may have had no effective voice, in view of the overpowering voice of two-thirds of those represented at the meeting, with a company going out of business as the Model Life Insurance Company did. There is no evidence that the insured had actual notice of the terms of the contract in time to make an election, if one was required or could be made by her, and the certificate which was sent to her is of such equivocal character that she might easily be misled as to the contract's being of such character as to affect her rights. Appellant did charge and receive from her the amount necessary to create the reserve. This might seem to amount to an election, but we think it did not necessarily, for it is inconceivable that, with knowledge that her rights had been waived, she should have continued to suffer the exaction that was made and pay it. How far she must be bound to have had knowledge, we need not discuss, for we think that before she could be put to an election she must be shown fairly to have understood the facts, and expressly consented. Appellant treated the old contract as in force, and has made no offer to return the money received to create a reserve. *Miller* v. *Tuttle* (1903), (Kan.), 73 Pac. 88; *Russ*

v. *Supreme Council, etc.* (1903), 110 La. 588, 34 South. 697, 98 Am. St. 469; *Grand Lodge, etc.,* v. *Sater* (1891), 44 Mo. App. 445; *Chadwick* v. *Order of Triple Alliance* (1894), 56 Mo. App. 463; *Supreme Council, etc.,* v. *Getz* (1901), 112 Fed. 119, 50 C. C. A. 153; *Sisson* v. *Supreme Court, etc.* (1904), 104 Mo. App. 54, 78 S. W. 297. Any other construction would, under the facts in this case, be unreasonable and oppressive. *Hall* v. *Western, etc., Assn.* (1903), 69 Neb. 601, 96 N. W. 170.

The contract provided for the transfer to appellant of all the assets of the Model Life Insurance Company, including all the money on hand. Whether that was much or 9. little does not appear. But as a reserve was required, it will be presumed that one was kept, and could not be less than the amount of the largest outstanding certificate.

Appellee's insured had contributed to create the fund, and appellant had contributed nothing. In good conscience and by express statute it was a trust fund for the policy-10. holders of the Model Life Insurance Company, and is attempted to be transferred to another company, without liability of the latter to account for it, for the benefit of those having an interest in it. Certainly any surplus or reserve belonged to the members. *United States Life Ins. Co.* v. *Spinks* (1906), 126 Ky. 405, 96 S. W. 889, 13 L. R. A. (N. S.) 1053; *Parish* v. *New York Produce Exchange* (1901), 60 Hun, App. Div., 11, 69 N. Y. Supp. 764.

It might be a serious question whether a cause of action did not accrue to the insured at once upon the contract's being entered into as for a conversion. *Roehm* v. 11. *Horst* (1900), 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; *Lovell* v. *St. Louis Mut. Life Ins. Co.* (1884), 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423.

It does not provide for the payment from the funds of the Model Life Insurance Company of a sum sufficient to 7. make up the necessary reserve, under the experience tables of mortality, in order to put them on an equal-

ity, but, in addition to turning over all the assets, the contract provides for charging up against the respective policies the amount which should have been charged to create the reserve on each certificate according to the actuaries' experience table to the end of the policy year next succeeding the date of the contract, and also to charge against each certificate the difference between the amount of the former premiums and the amount necessary to create the reserve in the future, with interest in advance at five per cent per annum, which charges are made liens on the certificates, so that so far as we are able to discover appellant took over the business and assets of the Model Life Insurance Company, without any other obligation than those of the ordinary business of life insurance. It is urged that if the insured did not have actual notice of the reinsurance contract, she must be held to have had constructive notice, by the reference in the certificate to the reinsurance contract. Ordinarily this would be so, but this is not an ordinary contract, or one which as an individual the insured could have made; but was a contract made for her, pursuant to a statute, and the statute manifestly intends that in the reinsurance it shall be the taking over of the obligations of the one company by the other, as they exist at the time. The language of the act is that "no such corporation * * * shall transfer its risks, or reinsure them * * * unless," etc. What are its risks? Certainly an incontestible certificate is a fixed liability and risk, if the premiums are kept up. It will not do to say that it is purely a matter of contract between the two companies, for if that were true the one company or its certificate holders could absolutely eliminate and destroy such risks as the requisite majority should see fit, and the certificate holders thus eliminated would be powerless and remediless, by reason of the controlling voice of the majority. Being a mutual company, all the certificate holders had contributed to the money on hand, as a trust fund, and to hold that there is entire free-

dom of contract respecting the fund by which it may be diverted to another company, and the form of the contract be such that no liability is incurred by the reinsuring company, is to strike down the very object of the statute, for if there is such power of contracting, there must be the power of contracting away the fund, so that we think one of two things must be true; viz., that the money received by appellant is a trust fund in its hands for the benefit of, if not the property of, the certificate holders of the old company, or that the statute means that the risks must all be taken over as they exist, and we think the latter is the true construction. The very purpose of the transfer, and the reason for investing the majority with the power of transfer is to preserve the rights and interests of all the certificate holders, and not to preserve some and destroy others, and we conclude that the risks must, under this statute, all be taken over as they exist or are fixed at the time.    The statute enters into

6.    and is a part of the contract.    Any other construction would be manifestly unjust, while the view we take of the matter, preserves the rights of all, and does no injustice, and that construction will be adopted which will produce that result.    *Bolles* v. *Mutual Reserve, etc., Assn.* (1906), 220 Ill. 400, 77 N. E. 198.

The reinsuring company has notice of the risks outstanding.    It deals with them not as separate matters, but as a whole, and upon the whole number of risks concludes,

7.    as a business proposition, that the risks as a whole are desirable, and must take them as they are without discrimination, or not at all, owing to the mutual character of the certificates.    The statute plainly contemplates the transfer of all a company's risks; that they shall be transferred as an entirety, for it requires notice to each certificate holder, and the concurrence of two-thirds of those attending a meeting called to consider the matter of transfer, and a thing within the spirit and intent of a statute is as much a part of

it as if it were so specifically written. Here again it is manifest that two-thirds of those attending a meeting, cannot make any kind of a contract they choose, and transfer all the assets of the company, and by contract divest the remaining certificate holders of vested rights, or of rights or obligations which, by virtue of being certificate holders, they possess. The privilege of transfer to some other company is purely an option given certificate holders, which they are at liberty to exercise or not.

In the case of the insured here, as in case of any other certificate holder, it may be that by the time the transfer was made the condition of health had become such that insurance could not be obtained elsewhere, and that only makes stronger the reason for not allowing the right of incontestability to be forfeited, or contracted away, or waived by the other members, or such as may attend a meeting. Upon the plainest principles of justice, and the acknowledged rules of agency, the members present at the meeting were acting as agents for the others, and without express authority to contract away their rights for their own benefit. The statute requires, as we think, that the transfer or reinsurance of the risks shall be of all the risks as they exist, unless there is an election to be transferred to some other company, and that the transfer, if made at all, must be of the risks of all the certificate holders of the transferring company as they exist, with the obligations and rights of that company, and that the risks are not the subject of exception, elimination, discrimination or selection by special contract. The object of insurance is indemnity, and the statute contemplates, upon the plainest grounds of public policy, if not by its express terms, that if the transfer is made, it must be of all the policies (not electing to be transferred elsewhere), with the obligations and rights as they exist at the time of the transfer, for the very purpose of preserving those rights and obligations, and not for the purpose of destroying them. If the Model Life Insurance Company could afford to insert an in-

contestability clause in its contracts—and appellant must be held to have known this—appellant could afford to accept the policies as they were if it took them. The statute should be construed to that end. It is essentially a subrogation and novation, so that it is unprofitable to discuss the question of the fairness of this incontestability provision, for it does not lie in appellant's mouth to say that it was an ill risk, for the contract is with reference to all the risks, knowing that some were good and some were bad, and reliance is on the average. *Cahen* v. *Continental Life Ins. Co.* (1877), 69 N. Y. 300; *Smith* v. *Northwestern, etc., Ins. Co.* (1905), 123 Wis. 586, 102 N. W. 57.

In view of our conclusion in the matter, it is immaterial whether the insured had notice of the terms of the reinsurance contract or not, for the purpose of putting her to an election, for she had but one election she could make with respect to the transfer, and that was to transfer to some-other company, which may have been impossible. Her only other remedy, if she had any, was a suit for breach of the contract or a suit in equity. But here again she was likely to be confronted with the statutory provision in regard to the power of the majority to transfer, and these facts enforce our conclusions as to the intent of the statute to require the acceptance of all risks if any, and we think such contract invalid so far as it attempts to waive or destroy subsisting rights, because it is both against public policy and is subversive of the manifest intention, if not the plain mandate of the statute. A very different question would be presented had this contract been one between the insured and appellant, understandingly and voluntarily entered into.

What has been said with respect to the complaint and answers disposes of the questions arising upon the motion for a new trial.

The judgment is affirmed.

ON PETITION FOR REHEARING.

MYERS, J.—The learned counsel for appellant have presented a very able argument in support of its petition for a rehearing, based upon the contention that the complaint is bad for failing to embody, or make as an exhibit, the so-called contract of reinsurance, and that we were in error as to the construction given to that contract.

The question of pleading was given deliberate examination by all members of the court before the original opinion was written, and on reëxamination we see no reason to change the views expressed.

Exception is taken specially to that part of the opinion in which the reinsurance contract is likened unto an application for insurance, which counsel concede need not accompany a complaint, for the reason, as they state, "that the application contains the statements and answers of the applicant, and the policy is the contract which the insurance company issues to him on his application." The original policy provides, in so many words, that the application "is hereby made a part of this contract," and it is unvaryingly held that such application need not be set out or exhibited in the complaint. In this case, under the new contract, the original policy was not taken up, and the contract, both under the statute and by the contract itself, is the taking over of the risk under the original policy, without any attempt or pretense of taking up the old contract, or substituting another for it, and the language of the certificate attached to the original policy is so worded as not readily to convey to one unskilled in interpreting such instruments, if not to mislead such an one, any other idea than that of assumption of that risk. It was an unnecessary thing, if it was intended merely to give notice of the fact that the new agreement had been entered into, for appellee's decedent was bound to know, if she was given notice, that a contract might be entered into by two-thirds of the policy-holders, and if it was, she was

charged with notice of it.   While the certificate is
1.   dated March 12, the date of the assumption contract, it
must be presumed that the statute was followed, and
that ten days elapsed during which election to transfer to
some other company might be made before the certificate was
in fact executed.   Supposing appellee's decedent to have
been ignorant of the terms of the assumption contract—and
it is not pretended that she knew them until the certificate
was given to her—it was then too late for her to extricate
herself.   Neither will it be presumed, nor was she in fact
bound to know, that the other members without her knowl-
edge or her assent would attempt, by virtue of mere numbers,
to destroy the value of her contract; so that instead of serv-
ing any legitimate purpose it simply operated as a trap to
ensnare her, under the contention that the certificate gave her
notice, when it is perfectly apparent that that certificate was
not executed until the ten days had elapsed, and dating on
the day of the assumption contract is now used as a basis for
imputing knowledge to her of facts now claimed to bind ap-
pellee, which it is not pretended that she knew until it was
too late for her to help herself.   Hence it fails of the purpose
now claimed for it, as conveying notice, and legally fails to
be effective for any purpose other than as an agreement of
assumption of the risk, for the plain reason that there was no
option then left to her as to any course, so as to put her to an
election, unless it be to bring an action at once for damages.
The statute does not require that the notice of the stock-
holders' meeting shall disclose any of the terms of the pro-
posed contract, which is in and of itself a strong argument
in favor of the proposition that the statute contemplates the
taking over of the obligations of the transferring company
as they exist.   These reflections enforce the correctness of
our former views, that the transfer contract is not, either by
the law or by the recitals in the certificate attached to the
original policy, such part of either the assumption or the

certificate that it is required to be set out or exhibited in the complaint.

What we have said here with respect to the complaint, applies also to the interpretation to be given to the transfer contract, except that we are further fortified in those views by the answers exhibiting the transfer contract, along with which is set out as an exhibit of the general application to the Model Life Insurance Company, a general proxy by which the insured authorized the executive committee of the Model Life Insurance Company to vote in her absence as her proxy at all meetings of the members of said company, in addition to which it is disclosed by the transfer contract that none of the members shall be deemed to have been reinsured until the expiration of ten days from the date of ratification, clearly showing that the certificate attached to the original policy was not in fact executed until the expiration of ten days from the date it bears. If the transfer contract was ratified by a vote under that proxy, it was a clear violation of a trust for the protection of the insured, and those similarly situated, to barter away their rights, as was here sought to be done. Referring to a statutory provision almost identical with our own, the supreme court of Illinois, in the case of *Bolles* v. *Mutual Reserve, etc., Assn.* (1906), 220 Ill. 400, 77 N. E. 198, held, under a contract providing for the transfer of all certificate holders "who by its books and records were in good standing," that it was immaterial whether the books and records showed decedent to be in good standing, if he was in fact in good standing, and said: "Being a public statute, it entered into and became a part of the contract of transfer, and if it can be construed so as to protect the plaintiff in this case, and all those who may be similarly situated, every one will agree that it should receive that construction. If it can be held that such companies cannot transfer a part of their members and risks, but must transfer all or none, except those who may elect to be transferred to other companies, then the ends of justice can be

attained and the courts will be prompt to adopt that construction. The section of the statute in question does not contemplate a transfer of a part of its members or risks. Its language is, 'its risks'—*i. e.*, all of them. The meeting to ratify the contract is to be a meeting of all members, the language being, 'notice  *  *  *  shall be mailed to each member.' The two-thirds vote must be two-thirds of all the members, and if the transfer shall be approved, 'every member' is given the right to file with the secretary notice of his preference to be transferred to some other corporation than that named in the contract, clearly indicating that unless that choice is made the contract of transfer *ipso facto* operated to transfer 'every member' to the new or transferee company. It would scarcely be contended that a corporation, under this statute, could transfer only its members of a particular class. If it should tender, by contract, to another company all of its members of a certain age or all residing in a particular place, and should attempt to have that contract ratified by its members, how would it proceed? Manifestly, without reading into the statute language which it does not contain [and which the legislature manifestly never intended] it could not do so, and hence the contract would be illegal and void, and we think the transferee company would be bound to take notice of such illegality.''

In *National Mut. Ins. Co.* v. *Home Benefit Soc.* (1897), 181 Pa. St. 443, 37 Atl. 519, 59 Am. St. 666, under a very similar statute, a contract by which the transferee company agreed to reinsure the members of the original company ''on the basis of their original applications to the former company, and on the execution of a satisfactory transfer application,'' it was held that the transferee could not, as a condition of such reinsurance, require that the applying member should furnish a medical examination. The court said: ''The words 'satisfactory transfer application, etc.,' considered in connection with what precedes and follows them, do not mean that the defendant will reinsure the applicant for

transfer on condition that his age and health are satisfactory to it.    To attribute to them this meaning is to defeat the obvious purpose of the contract and the statute which authorized it.    The paramount purpose of the contract was protection to the members of the National Mutual Insurance Company by reinsurance with the defendant.    In our view of the contract it bound the latter to reinsure the members of the former who elected to have their insurance transferred in accordance with its provisions.''

These cases sufficiently indicate the correctness of our former opinion upon the subject of the construction of the contract, that the attempt to destroy the incontestability clause in the policy was ineffective, and the possibility that two-thirds in number would do, or attempt to do, what was attempted in this case, was certainly a good reason, if not the impelling one, for the legislature to require the transfer of all the risks as they were.    There is no claim or pretense that the insured attended the meeting, or had any notice of the proposed contract or its terms until it was too late for her either to interpose objection or elect to be transferred to some other company.    We were, however, led into a partial inaccuracy of statement respecting the reserve fund of the Model Life Insurance Company on hand, in saying that ''it is attempted to be transferred to another company without liability of the latter to account for it, for the benefit of those having an interest in it.''    The contract was very voluminous.    One section provides, as shown in the original opinion, for charging up as a lien upon each certificate an amount sufficient to equal the amount which should have been charged and accumulated to the credit of each certificate according to the actuaries' table of mortality, and four per cent, and according to appellant's premium rate, for a like policy at the age of entry.    Our attention was not called by either party to the provisions of another section by which it was agreed that the certificate holders should be allowed in five equal annual installments as a credit

on their annual premiums, in case of payment thereof only, an amount "to be determined by the proportion which the total premiums heretofore paid by said members respectively to said party of the first part bears to the total amount of the cash, and principal of the mortgages, transferred and delivered hereunder. This clause seems to provide for an accounting for the cash, and principal of the mortgages transferred to appellant, in case the future premiums are paid; but the contract makes no provision for accounting for interest on the mortgages, if any, and for the other property transferred under the agreement, which is recited as "notes, bonds, good-will, collaterals, furniture, fixtures, and all and singular its assets and property of every kind and character." Whether much or little in amount or value is not disclosed.

To the extent of the partial inadvertence of statement respecting the cash and principal of mortgages, the original opinion is modified, but we see no reason to depart from the results formerly reached, and the petition for a rehearing is overruled.